1   Gina M. Roccanova (State Bar No. 201594)
    Yuki Cruse (State Bar No. 310073)
2   JACKSON LEWIS P.C.
    50 California Street, 9th Floor
3   San Francisco, California 94111-4615
    Telephone      (415) 394-9400
4   Facsimile      (415) 394.9401
    E-mail:        Gina.Roccanova@jacksonlewis.com
5   E-mail:        Yuki.Cruse@jacksonlewis.com

6   Barbara J. Parker (State Bar No. 69722)
    City Attorney
7   Ryan G. Richardson (State Bar No. 223548)
    Oakland City Attorney
8   1 Frank H. Ogawa Plaza
    Oakland, CA 94612
9   Telephone:     (510) 238-3601
    Facsimile:     (510) 238-6500
10  E-mail:        bjparker@oaklandcityattorney.org
    E-mail:        RRichardson@oaklandcityattorney.org
11
    Attorneys for Respondents,
12  CITY OF OAKLAND and POLICE COMMISSION
    OF THE CITY OF OAKLAND
13

14              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
15

16  FRANCISCO NEGRETE, WILLIAM        Case No.:  3:19-cv-05742-WHO
    BERGER, BRANDON HRAIZ, CRAIG
17  TANAKA, JOSEF PHILLIPS;           Assigned For All Purposes To:
                    Petitioners,      Hon. William H. Orrick
18          v.
    CITY OF OAKLAND; POLICE           **RESPONDENTS CITY OF OAKLAND**
19  COMMISSION OF THE CITY OF         **AND POLICE COMMISSION OF THE**
    OAKLAND; DOES 1 Through 10,       **CITY OF OAKLAND'S REPLY TO**
20  INCLUSIVE,                        **PETITIONERS' OPPOSITION TO**
                    Respondents.      **RESPONDENTS' MOTION FOR**
21                                    **JUDGMENT ON THE PLEADINGS; AND**
                                      **OPPOSITION TO PETITIONERS'**
22                                    **CROSS-MOTION FOR JUDGMENT ON**
                                      **THE PLEADINGS**
23
                                      Hearing Date:    May 20, 2020
24                                    Hearing Time:    2:00 pm
                                      Courtroom:       Telephonic Appearance
25
                                      Removal Filed:   September 12, 2019
26                                    Trial Date:      None set.

27

28
    ──────────────────────────────────────

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................4

II.     ARGUMENT .......................................................................................................5

        A.      Petitioners Urge Disregard of the Court's Authority. .............................5

        B.      The City Acted in Accordance with the Court's Orders. ........................5

        C.      Petitioners Have Not Demonstrated That The Compliance Director Lacked
                Authority. ...............................................................................................6

                1.      The Charter Does Not Explicitly Prohibit Delegation of Authority. ..........6

                2.      The Compliance Director's Authority Is Not Unrestricted or
                        Unchecked. ...................................................................................7

        D.      The City Properly Followed the NSA and the Charter by Harmonizing Them
                Under Principles of Statutory Interpretation. ...........................................8

        E.      The City Had No Obligation to Seek Declaratory Relief Upon Enactment of
                the Charter Amendment. ..........................................................................9

        F.      The City Contemplated That the NSA's Tasks Would Be Fulfilled Despite
                the Charter Amendment. .........................................................................10

        G.      Petitioners Are Not Excused from Exhausting Administrative Remedies.............11

        H.      Petitioners Have Not Established A Basis for Injunctive Relief. .........................13

III.    CONCLUSION ..................................................................................................13

RESPONDENTS' REPLY TO PETITIONERS' OPP. TO
RESPONDENTS' MTN FOR JUDGMENT ON THE
PLEADINGS; AND OPP. TO PETITIONERS' CROSS-
MOTION

CASE NO. 3:19-CV-05742-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Coachella Valley Mosquito & Vector Control Dist. v. Cal. Pub. Emp't Relations Bd.*,
   35 Cal. 4th 1072 (2005) ..................................................................................12, 13

*Delphine Allen, et al. v. City of Oakland, et al.*
   U.S.D.C. ND CA Case No 3:00-cv-04599-WHO......................................4, 8, 10, 13

*Dep't of Pers. Admin. v. Superior Court*,
   5 Cal. App. 4th 155 (1992)..................................................................................12

*GTE Sylvania v. Consumers Union*,
   445 U.S. 375..........................................................................................................5

*Officers for Justice v. Civil Serv. Comm'n*,
   979 F.2d 721 (9th Cir. 1992)..................................................................................9

*Omaha Indem. Co. v. Superior Court*,
   209 Cal. App. 3d 1266 (1989)..............................................................................12

*SEC v. Randolph*,
   736 F.2d 525 (9th Cir. 1984)..................................................................................5

*Taylor v. Crane*,
   24 Cal. 3d 442 (1979) ...............................................................................6, 7, 8, 9

**Statutes**

Cal. Civ. Proc. Code § 1286.2....................................................................................7

RESPONDENTS' REPLY TO PETITIONERS' OPP. TO
RESPONDENTS' MTN FOR JUDGMENT ON THE
PLEADINGS; AND OPP. TO PETITIONERS' CROSS-
MOTION

CASE NO. 3:19-CV-05742-WHO

1  **I.     INTRODUCTION**

2       Petitioners seek, by way of mandamus and declaratory relief, to undermine this Court's

3  inherent authority to enforce Respondent City of Oakland's Negotiated Settlement Agreement

4  ("NSA") entered by the Court as a consent decree. The City entered into the NSA to resolve a

5  separate litigation matter where plaintiffs alleged misconduct by the City's Police Department

6  resulting in violations of the plaintiffs' civil rights.[1] The NSA established the position of a

7  Compliance Director to ensure promises in the NSA would be fulfilled. Petitioners, who are City

8  police officers, argue that the NSA is unlawful because the City's Charter provides no role for a

9  Compliance Director. But contrary to Petitioners' claim, the City is permitted to establish the role

10  of a Compliance Director because the City's Charter does not expressly restrict the City from doing

11  so.

12       Petitioners also argue that the Court did not have the authority to approve the NSA and enter

13  subsequent orders that sought to enforce the NSA's terms. Petitioners' argument, however, is based

14  on the faulty assumption that the underlying NSA is unlawful, which it is not.

15       In 2018, Petitioners were involved in a fatal shooting while on duty. The Compliance

16  Director determined their use of force to be unreasonable and recommended termination of

17  Petitioners' employment; whereas, the Chief of Police did not agree with the Compliance Director's

18  findings. Thus, a conflict was created that the City was required to reconcile under its Charter and

19  the NSA, which both govern the adjudication of police discipline. The City applied well-established

20  statutory interpretation principles to reconcile the terms of the Charter and the NSA, and ultimately

21  upheld the Compliance Director's decision.

22       Petitioners now seek to unjustifiably overturn the City's decision and undermine this

23  Court's authority to enter Orders to enforce the NSA. However, Petitioners are not entitled to any

24  judicial relief because the City acted lawfully in entering into the NSA and in complying with its

25  terms and this Court's orders. Petitioners cannot state a claim upon which relief can be granted and

26  this Court should grant Respondents' motion for judgment on the pleadings.

27  _____

28  [1] *Delphine Allen, et al. v. City of Oakland, et al.* Case No. (3:00-cv-04599-WHO) ("*Allen*").

RESPONDENTS' REPLY TO PETITIONERS' OPP. TO
RESPONDENTS' MTN FOR JUDGMENT ON THE
PLEADINGS; AND OPP. TO PETITIONERS' CROSS-
MOTION                                                    CASE NO. 3:19-CV-05742-WHO

1   II.    **ARGUMENT**

2          A.    **Petitioners Urge Disregard of the Court's Authority.**

3          The Court has inherent authority to enforce the terms of a consent decree. *SEC v. Randolph*,

4   736 F.2d 525, 528 (9th Cir. 1984). On December 12, 2012, the Court exercised that authority and

5   issued an order which states:

6          The Compliance Director will have authority to direct specific actions by the City
       or [Department] to attain or improve compliance levels, or remedy compliance

7       errors, regarding all portions of the NSA …, including but not limited to: …
       personnel decisions … Findings and disciplinary actions in misconduct cases and

8       use-of-force reviews …

9   (Petition, ¶ 52; Petitioners' RJN, Ex. C, the "12-12-12 Order") Petitioners seek to undermine the

10  Court's authority by asserting that the Court was prohibited from issuing the 12-12-12 Order.

11  Petitioners' argument is based on the incorrect assumption that the underlying NSA violated the

12  Charter and was thus void. However, as discussed below, this argument fails. The City entered into

13  a valid agreement, an act that constituted an exercise of its authority and which was not otherwise

14  restricted by the Charter.

15         Petitioners also seek to undermine the Court's authority by arguing that the City should

16  have ignored the Compliance Director's findings. In essence, Petitioners argue that the City should

17  have violated this Court's 12-12-12 Order. Urging disregard of the Court's authority is not a valid

18  basis for relief.

19         B.    **The City Acted in Accordance with the Court's Orders.**

20         The City's actions in this matter were consistent with this Court's orders. The City

21  acknowledges its obligation to obey the valid dictates of this Court. *See GTE Sylvania v. Consumers*

22  *Union*, 445 U.S. 375, 386 (observed "persons subject to an injunctive order issued by a court with

23  jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper

24  grounds to object to the order"). As stated in the 12-12-12 Order, failure to abide by its terms would

25  have caused the City to face possible "*contempt, monetary sanctions, expansion of the Compliance*

26  *Director's powers, or a full receivership*." (Respondents' RJN, Ex. C at p. 9) (emphasis added.)

27         Indeed, the City was previously admonished that the 12-12-12 Order is a "stern" order.  This

28

RESPONDENTS' REPLY TO PETITIONERS' OPP. TO
RESPONDENTS' MTN FOR JUDGMENT ON THE
PLEADINGS; AND OPP. TO PETITIONERS' CROSS-
MOTION

CASE NO. 3:19-CV-05742-WHO

admonishment came after the City Administrator imposed a level of discipline that differed from the Compliance Director's proposal. The Court provided that the City Administrator's actions "violated the orders of this Court" and reiterated that "no discipline in Class I misconduct cases can be imposed absent the Compliance Director's direction or approval." (Respondents' RJN, Ex. D at p. 1 ["The Court therefore issues this order to reiterate what should need no clarification: *Orders of this Court must be followed, and appropriate sanctions shall be imposed when they are not*"]) (emphasis added.)

Seeking to avoid what occurred in 2014, the City acted on the Compliance Director's findings and recommendations and initiated disciplinary action against Petitioners. This action was taken in accordance with both the 12-12-12 Order of the Court and the provisions of the City's Charter. Petitioners fail to demonstrate otherwise.

C.   **Petitioners Have Not Demonstrated That the Compliance Director Lacked Authority.**

Petitioners claim that the City delegated authority to the Compliance Director and that such a delegation violates the Charter because: (1) the Charter does not explicitly provide for a Compliance Director and (2) the Compliance Director's authority to direct disciplinary actions by the Chief is an unlawful delegation of the Chief's mandated duties under the Charter. Both of these arguments fail as follows.

1.   The Charter Does Not Explicitly Prohibit Delegation of Authority.

First, it is settled law that a charter city impliedly possesses powers not expressly limited by its charter. *Taylor v. Crane*, 24 Cal. 3d 442, 450 (1979). The City's Charter does not expressly limit the City's ability to delegate authority to the Compliance Director nor can such a restriction be implied. *Id.*

The very case Petitioner cites to support its arguments, *Taylor v. Crane*, *supra*, 24 Cal. 3d 442, only bolsters the City's position. In *Taylor*, a city and its police officer union entered into an agreement to arbitrate the city's decision to terminate police officers. The arbitrator's award overturned the city's decision to terminate an officer and ordered that the officer be reinstated. The

RESPONDENTS' REPLY TO PETITIONERS' OPP. TO
RESPONDENTS' MTN FOR JUDGMENT ON THE
PLEADINGS; AND OPP. TO PETITIONERS' CROSS-
MOTION

CASE NO. 3:19-CV-05742-WHO

1  city sought a declaratory judgment that the arbitrator's award was void because its charter did not

2  permit an arbitrator to decide discipline for its employees. That authority, the city argued, was

3  reserved only to the city manager under the city's charter. *Id.* The Court held, however, that unless

4  the charter expressly prohibits the city from agreeing to arbitrate, the city retains the power to do

5  so. *Taylor*, *supra*, 24 Cal. 3d at 450-452. The Court explained that a city charter is construed to

6  permit the exercise of all powers not expressly limited by the charter or by state or federal law. *Id.*

7                  2.    The Compliance Director's Authority Is Not Unrestricted or Unchecked.

8         The Compliance Director's authority to direct the Chief is subject to checks and reviews,

9  which is relevant to the legality of such authority. In *Taylor*, the city argued that allowing an

10  arbitrator the final word on police officer termination "unlawfully delegate[d]" the city manager's

11  discretion in personnel matters. The Court found that since the city manager retains significant

12  power to initially impose discipline, there was no "total abdication" of his disciplinary authority.

13  *Taylor*, *supra*, 24 Cal. 3d at 452-453. (internal citations omitted.) Moreover, the Court held that

14  even if some portion of the city manager's powers are viewed as having been delegated, the exercise

15  of that portion of authority is subject to adequate judicial safeguards. *See* Cal. Civ. Proc. Code §

16  1286.2 (allowing the court to vacate arbitration awards in certain circumstances, such as when

17  procured by corruption or fraud). Thus, the Court held there was no unlawful delegation of the City

18  Manager's powers. *Taylor*, *supra*, 24 Cal. 3d at 452.

19         Similarly, here, the Compliance Director does not supplant or replace the Chief entirely.

20  Rather, the Compliance Director is authorized to "direct specific actions," including personnel

21  actions, by the City. Notably, the 12-12-12 Order provides for a dispute resolution process if the

22  City disagrees with the Compliance Director's decision. (*See* Respondents' RJN, Ex. C at p. 8:3-

23  19 ["the City may file a notice with the Court seeking an expedited hearing to determine whether

24  the City should be excused from complying with the Compliance Director's direction"])  The City

25  retained the ability to challenge the Compliance Director's intervention and, in its discretion,

26  elected not to do so.  Thus, as in *Taylor*, *supra*, to the extent there is any delegation of authority,

27  there are judicial review safeguards.

28

RESPONDENTS' REPLY TO PETITIONERS' OPP. TO
RESPONDENTS' MTN FOR JUDGMENT ON THE
PLEADINGS; AND OPP. TO PETITIONERS' CROSS-
MOTION

CASE NO. 3:19-CV-05742-WHO

Furthermore, the City's disciplinary process of police officers is subject to additional safeguards. As peace officers and public employees, Petitioners have rights and remedies related to discipline and termination, including the right to binding arbitration. This is true even when the Compliance Director directs the personnel action and the City declines to invoke the dispute-resolution process in the 12-12-12 Order. Petitioners have not put forth, and *Taylor* does not support, any argument that Petitioners' right to arbitration as a result of collective bargaining is somehow inconsistent with the Charter or otherwise unenforceable. Therefore, the very type of delegation of authority that was upheld in *Taylor* – binding arbitration for disciplined police officers – provides an additional limitation on the Compliance Director's authority.

**D.** **The City Properly Followed the NSA and the Charter by Harmonizing Them Under Principles of Statutory Interpretation.**

In November 2016, the City's electorate passed Measure LL (the "Charter Amendment"). (Petition, ¶ 16) Measure LL amended the City Charter to provide for the establishment of a civilian Police Commission ("Commission") and a Community Policy Review Agency ("Agency"). *Id*. The Charter Amendment empowers the Agency, as the Commission's investigative body, to investigate public complaints alleging misconduct by sworn members of the City's Police Department. (Petition, ¶ 18)

When the Chief of Police agrees with the Agency's findings and proposed discipline, the Charter Amendment provides that the Chief shall notify the subject officer. But, if there is a disagreement between the Chief and the Agency, the Charter Amendment provides that the matter is to be submitted to a Discipline Committee. (Petition, ¶ 21) The Charter Amendment does not specifically address either the position of the Compliance Director, which was established in 2012, or the actions to be taken if there is a disagreement between the findings and recommendations of the Compliance Director and the Agency. As a result, the City was in the position of having to harmonize the Charter Amendment with the terms of the pre-existing NSA and *Allen* Orders.

In doing so, the City reached the only logical conclusion as to how to resolve a dispute between the Compliance Director and the Agency. The City applied long-standing principles of

RESPONDENTS' REPLY TO PETITIONERS' OPP. TO
RESPONDENTS' MTN FOR JUDGMENT ON THE
PLEADINGS; AND OPP. TO PETITIONERS' CROSS-
MOTION

CASE NO. 3:19-CV-05742-WHO

1    statutory interpretation to harmonize any conflicts within the different pieces of law. Absent a clear

2    manifestation of contrary intent, a newly enacted or revised statute is presumed to be harmonious

3    with existing law and its judicial construction. *Officers for Justice v. Civil Serv. Comm'n*, 979 F.2d

4    721, 725 (9th Cir. 1992); *see also Taylor*, *supra*, 24 Cal. 3d at 451 (held the city may harmonize

5    arbitration agreements with the city's charter absent language in the charter expressly permitting

6    the city to enter such agreements).

7        Here, the City followed the unmistakably clear mandate of the Court's orders by adopting

8    the Compliance Director's findings over the Chief's. This essentially meant the Compliance

9    Director's findings as to Petitioners' use of force stood in the place of the Chief's. Notably,

10   Petitioners have not asserted that the City misinterpreted the Compliance Director's intention – i.e.,

11   his intention to supplant the Chief of Police's findings only, regarding specific personnel findings.

12   This resulted in a dispute between the findings of the Agency and the decision of the Compliance

13   Director. Thus, the Discipline Committee properly exercised its jurisdiction to resolve this dispute.

14   Petitioners are unable to establish that the City's harmonization was improper or otherwise violated

15   the City Charter or Municipal Code.

16       **E.    The City Had No Obligation to Seek Declaratory Relief Upon Enactment of
             the Charter Amendment.**

17

18       Despite the City's authority to reconcile its Charter with the NSA, Petitioners claim the City

19   had an obligation to notify this Court about the Charter Amendment and seek guidance on how best

20   to implement the NSA in light of the Charter Amendment.

21       Petitioners point to language in a prior document which states that "If there is a significant

22   change in a state law that impairs or impedes the City's ability to implement this Agreement, then

23   each of the parties reserves the right to seek declaratory relief or other relief from the Court

24   regarding implementation of the affected provisions of this Agreement in light of the change in

25   state law. (Respondents' RJN, Ex. A at p. 60:19-22) But, Petitioners misconstrue this language.

26       This language does not mandate that the City seek declaratory relief. The City is only

27   permitted to do so, if needed. However, here, there was no such need. The City was able to reconcile

28

RESPONDENTS' REPLY TO PETITIONERS' OPP. TO
RESPONDENTS' MTN FOR JUDGMENT ON THE
PLEADINGS; AND OPP. TO PETITIONERS' CROSS-
MOTION                                              CASE NO. 3:19-CV-05742-WHO

both pieces of law by allowing the Compliance Director's findings to stand in the place of the Chief's. Petitioners are unable to show that this reconciliation was improper.

Petitioners also misconstrue language in the 12-12-12- Order by claiming that it "charged the City with notifying this Court should a conflict arise between its legal obligations and direction received from the Compliance Director." (Petitioners' Opposition, p. 7:9-11) However, the 12-12-12 Order places no such obligation upon the City. The Order does, however, permit the City to "file a notice with the Court seeking an expedited hearing to determine whether the City should be excused from complying with the Compliance Director's direction." (Respondents' RJN, Ex. C at p. 8:9-11) Notwithstanding, no such request was required because the City was able to reconcile the NSA's terms and the Charter Amendment.

**F.    The City Contemplated That the NSA's Tasks Would Be Fulfilled Despite the Charter Amendment.**

Petitioners argue the NSA's terms should be fulfilled pursuant to the *Allen* parties' underlying intent. Petitioners erroneously assert that the *Allen* parties contemplated that the Charter Amendment would supersede the NSA's terms. To the contrary, the *Allen* parties did not intend for the Charter Amendment to supersede the NSA.

Petitioners point to the following language in the AMOU that: "Nothing in the AMOU shall limit the power of the Oakland City Council, the Mayor, the City Administrator, the City Attorney and the OPD from exercising their authority and satisfying their duties as set forth in the Charter and other applicable law." (Petitioners' RJN, Ex. F, p. 8:25-27)

Petitioners claim this language makes clear that the City did not intend for the Compliance Director to limit the authority of the Chief. However, Petitioners fail to recognize that the 12-12-12 Order supersedes any conflicting provisions in the AMOU. The Order provides "The AMOU will remain in effect except to the extent it conflicts with this order." (Respondents' RJN, Ex. C at p. 3:5-7) The 12-12-12 Order's mandate – that the Compliance director shall direct personnel actions by the Chief – supersedes the prior provision in the AMOU which prohibits a limit to the Chief's power. Thus, the operative 12-12-12 Order makes clear that the *Allen* parties contemplated

1  that the Compliance Director may curtail the authority of the Chief with respect to specified actions

2  outlined in the Order, including personnel actions.

3      Petitioners also attempt to make much of documents that provided a summary of the Charter

4  Amendment. However, these documents do not show the City intended for the Charter amendment

5  to supersede the NSA's terms.

6      Petitioners downplay, but nonetheless point out, that the City Attorney's Office issued a

7  "Frequently Asked Questions (FAQs) Regarding the City Charter Amendment Creating the

8  Oakland Police Commission." One of the questions posed was "How will Measure LL affect the

9  City's efforts to comply with the Negotiated Settlement Agreement?" To which the City Attorney's

10  office responded:

11      The City does not anticipate Measure LL having any negative effect on the City's
       efforts to comply with the Negotiated Settlement Agreement ("NSA"). (The NSA
12      resolved *Delphine Allen, et al. v. City of Oakland*, a lawsuit filed against the City
       that alleged police officer misconduct. A court-appointed monitor and compliance
13      director oversees the OPD's compliance with the NSA.) Because one of the goals
       of the NSA is to institutionalize reforms and sustain them after court oversight ends,
14      Measure LL may be helpful to sustain the reforms by providing citizen input
       regarding OPD policies, appointment and removal of the Police Chief, and
15      discipline.

16  (Petitioners' RJN, Ex. K at p. 8) Thus, contrary to what Petitioners suggest, the electorate was

17  informed that the NSA's terms would continue to be fulfilled despite the Charter Amendment. This

18  would include allowing the Compliance Director to direct specific actions by the City such as

19  personnel actions. The legislative history of Measure LL also reflects that the City Council's intent

20  was to fulfill the objectives of the NSA. (Respondents' RJN, Ex. G at p. 6) Accordingly, the City

21  acted consistently with its intent in entering the NSA as well as its Charter.

22      **G.      Petitioners Are Not Excused from Exhausting Administrative Remedies.**

23      Petitioners have not established that they are excused from exhausting administrative

24  remedies. Petitioners argue they are excused from exhaustion because the City does "not properly

25  have jurisdiction to determine this issue in an administrative forum." (Petitioners' Opposition at p.

26  24:12-13) But Petitioners cannot show that the City lacks authority to resolve the underlying

27  dispute.

28
RESPONDENTS' REPLY TO PETITIONERS' OPP. TO
RESPONDENTS' MTN FOR JUDGMENT ON THE
PLEADINGS; AND OPP. TO PETITIONERS' CROSS-
MOTION                                                    CASE NO. 3:19-CV-05742-WHO

Exhaustion of administrative remedies may be excused when a party claims that "the agency lacks authority, statutory or otherwise, to resolve the underlying dispute between the parties." *Coachella Valley Mosquito & Vector Control Dist. v. Cal. Pub. Emp't Relations Bd*., 35 Cal. 4th 1072, 1081-82 (2005). In deciding whether to entertain a claim that an agency lacks jurisdiction before the agency proceedings have run their course, a court considers three factors: (1) the injury or burden that exhaustion will impose; (2) the strength of the legal argument that the agency lacks jurisdiction; and (3) the extent to which administrative expertise may aid in resolving the jurisdictional issue. *Id*. at 1082.

Petitioners cannot satisfy any of these factors. First, Petitioners have not established any injury or burden that exhausting administrative remedies will impose. An administrative remedy is not inadequate "merely because additional time and effort would be consumed by its being pursued through the ordinary course of the law." *Omaha Indem. Co. v. Superior Court*, 209 Cal. App. 3d 1266, 1269 (1989) (held administrative remedy not inadequate). Nor is there a significant public interest in obtaining a definitive resolution of a fundamental legal question. *See Dep't of Pers. Admin. v. Superior Court*, 5 Cal. App. 4th 155, 170-171 (1992) (exhaustion excused because of urgent need of judicial determination as to employer's authority to impose last offer after impasse in labor negations). The City has established that it had authority to enter into the NSA as well as the authority and ability to reconcile the NSA and the Charter Amendment's terms.

Second, Petitioners underlying legal argument that the City did not have authority to allow the Compliance Director's findings to stand in the place of the Chief's is weak and unpersuasive. As discussed above, the City was required by this Court to adopt the Compliance Director's findings and the City properly harmonized the Charter Amendment and the NSA's terms in adjudicating Petitioners' discipline. Thus, the second factor does not weigh in favor of excusing exhaustion. Finally, judicial intervention at this stage will deny the Court of the City's administrative expertise in resolving the dispute. Petitioners possess robust due process rights which allows for Petitioners to litigate the issue through arbitration or before the Civil Service Board. (*See* Respondents' RJN, Ex. I, MOU at pp. 39-45) During the appeal process, the City will

RESPONDENTS' REPLY TO PETITIONERS' OPP. TO
RESPONDENTS' MTN FOR JUDGMENT ON THE
PLEADINGS; AND OPP. TO PETITIONERS' CROSS-
MOTION

CASE NO. 3:19-CV-05742-WHO

1   offer supporting evidence to justify its decision to discipline Petitioners. Thus, the Court will be

2   without such insight if the Court cuts the City out of the administrative process.

3       Furthermore, this case is distinguishable from *Coachella*, *supra*, where the issue was

4   whether the California Public Employment Relations Board ("PERB") had jurisdiction to issue a

5   charge against a district beyond the statutory time limitations outlined in the California Government

6   Code. The Court found factors weighed in favor of excusing the district from exhausting

7   administrative remedies. However, unlike here, in *Coachella*, the district made a strong and

8   ultimately persuasive argument that PERB did not apply the proper limitations period and that there

9   was a strong public interest in understanding how PERB applied its time limitations when issuing

10  charges. Unlike in *Coachella*, Petitioners have not proffered a strong nor persuasive argument that

11  the City lacked authority to allow the Compliance Director's findings to stand in the shoes of the

12  Chief. Nor have Petitioners demonstrated, other than through their own self-serving assertions, that

13  there is a strong public interest in understanding the application of the Charter Amendment to

14  warrant excuse from exhausting administrative remedies.

15      **H.      Petitioners Have Not Established A Basis for Injunctive Relief.**

16      Petitioners claim that they are entitled to injunctive relief by requiring the City to maintain

17  the status quo (i.e., by reinstating Petitioners back to work). Petitioners baldly claim with no

18  supporting explanation how exactly they and the public's interest will be harmed.

19      Indeed, it is the City that will suffer harm if the City is forced to reinstate Petitioners'

20  employment while awaiting this Court's direction. The City will suffer harm because it will

21  continue to have to employ and pay Petitioners, who have been found by the Compliance Director

22  to have engaged in unreasonable use of force to warrant termination. Thus, the City will be forced

23  to directly disobey the Compliance Director's recommendation and direction, the City's agreement

24  with the *Allen* plaintiffs, and this Court's Orders.

25  **III.   CONCLUSION**

26      The City entered into a valid consent decree delegating authority to the Compliance Director

27  under the City's plenary power to govern its municipal affairs. This authority was neither restricted

28

13

by or otherwise in violation of the Charter. This Court then properly exercised its authority to issue

orders to enforce the terms of the NSA, which the City followed. Thus, mandamus cannot not lie

because the City did not fail to perform any ministerial duty nor abuse its discretion. Further,

Petitioners' request for declaratory relief should similarly be denied because Petitioners

unjustifiably seek to nullify the Court's inherent authority to enter consent decrees and enter

remedial judgments to enforce the consent decrees' terms. Petitioners remain unable to state a claim

upon which relief may be granted. Based on the foregoing, the Court should grant Petitioners'

Motion for Judgment on the Pleadings.

Dated:  April 27, 2020                          JACKSON LEWIS P.C.


                                   By:    /s/ Yuki Cruse
                                          Gina M. Roccanova
                                          Yuki Cruse
                                          Attorneys for Respondents,
                                          CITY OF OAKLAND and
                                          POLICE COMMISSION OF THE
                                          CITY OF OAKLAND

RESPONDENTS' REPLY TO PETITIONERS' OPP. TO
RESPONDENTS' MTN FOR JUDGMENT ON THE
PLEADINGS; AND OPP. TO PETITIONERS' CROSS-
MOTION                                          CASE NO. 3:19-CV-05742-WHO